IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DYMON MOORE AND GASSEY WILLIAMS, JR.**           **PLAINTIFFS**

**VS.**           **CIVIL ACTION NO.: 1:24-cv-0005-MPM-DAS**

**THE CITY OF COLUMBUS AND JOHN DOES 1-20**           **DEFENDANTS**

**ORDER**

This cause comes before the court on the motion of defendant City of Columbus, Mississippi, seeking summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiffs Dymon Moore and Gassey Williams, Jr. have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This lawsuit arises from events that took place in the early morning hours of January 1, 2023 in Columbus. After celebrating New Years at a local bar, plaintiffs traveled to a nearby Waffle House, where they were arrested for disobeying lawful orders from two Columbus police officers. Following dismissal of the criminal charges against them, plaintiffs filed this lawsuit in the Circuit Court of Lowndes County, asserting both federal and state claims against the City arising out of the January 1 events. While plaintiffs' complaint is frequently vague regarding the exact nature of their claims, it does plainly assert violations of their Fourth Amendment and substantive due process rights. [Complaint at 6]. Plaintiffs' complaint also includes a lengthy list of claims which are apparently asserted under state law, including claims for slander, libel, false arrest, unlawful detention, false imprisonment, and negligence. [*Id.* at 5-6].

1

The City has filed a motion for summary judgment, and this court's analysis of that motion is greatly simplified by the fact that Columbus is the sole defendant in this case. This is because, even if this court were to assume for the sake of argument that plaintiffs had managed to create fact issues regarding a violation of their constitutional rights in this case, this would be insufficient to support any federal law claims against the City. In so stating, this court notes that, as plaintiffs now concede, it is well settled that 42 U.S.C. § 1983 is the statutory vehicle by which plaintiffs may seek to recover damages for violations of their constitutional rights. This court further notes that § 1983 claims against municipalities have developed their own stringent body of law, discussed below, and plaintiffs were seemingly unaware of this authority when they drafted their complaint. Indeed, plaintiffs' complaint does not even mention § 1983, and, even worse, it includes assertions which seem to outright preclude liability under that statute. In particular, the complaint states that "the City of Columbus are vivaciously liable [sic] for the actions of the City of Columbus police officers on the day in question." [Complaint at 4]. This court will assume that plaintiffs meant to write "vicariously" instead of "vivaciously" in their complaint, and they confirm in their briefing that this was their intent. [Brief at 1]. However, plaintiffs' claims in this context run head-first into U.S. Supreme Court precedent which **precludes** vicarious liability by municipalities under § 1983 for constitutional violations by their employees.

It is well settled that governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Thus, there is no *respondeat superior* liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question.

2

*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  It is, further, settled law that the alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of R.H.*, 237 F.3d 567, 578 (5th Cir. 2001).

In light of *Monell* and its progeny, plaintiffs' assertion of vicarious liability seems almost tailor-made to defeat any federal constitutional claims which they might wish to assert against the City.  Indeed, the *Monell* doctrine is, in this court's experience, an often insurmountable obstacle to municipal liability in § 1983 cases, since plaintiffs are generally unable to prove that a particular constitutional violation occurred pursuant to a municipal policy or custom. This court finds this to be the case here as well, since plaintiffs offer insufficient proof regarding any of the potential avenues for establishing municipal liability.  In this court's experience, the most common (and easiest) path for a plaintiff to overcome *Monell*'s stringent standard is by demonstrating that a "final policymaker" for a municipality committed the constitutional violation in question.  In this vein, it is well established that "[a] single decision may create municipal liability if that decision [is] made by a final policymaker responsible for that activity." *See Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).  However, the plaintiffs in this case concede that the relevant actions were taken by low-level police officers who were not final policymakers for the City, and they must therefore travel under much more difficult avenues for establishing municipal liability.

In attempting to establish the City's potential liability under § 1983, plaintiffs write that:

> Plaintiffs' deposition testimony states that they had no knowledge of any unconstitutional policy that caused their alleged injuries, as both testified that they had no knowledge of any of the City's policies and procedures.  However, at trial, the Plaintiffs can dispute the fact that the City's express policies are constitutional.  Although the Plaintiffs testified that they have no knowledge about the officers' training or qualifications, the Plaintiffs can travel under a failure to train theory of municipal liability. The fact that Officer

3

> Gooch did not identify himself as an officer when he came on the scene shows that he was not properly trained to be a police officer or that the City of Columbus was not giving him up to date training on how to interact with civilians when he initially interacts with them. Obviously, this means that the City of Columbus have a history of not properly training their officers, or a the very least, they are not continually training or educating them on how to interact with civilians.

[Brief at 16]. Plaintiffs thus seek to recover against the City under a "failure to train" theory, but, in choosing to do so, they subject themselves to what is quite arguably the most stringent body of Supreme Court precedent relating to municipal liability under § 1983, bar none.

While a failure to train employees may, under certain circumstances, constitute an official government policy giving rise to a claim under 42 U.S.C. § 1983, the U.S. Supreme Court has made it clear that such circumstances are rare indeed. In *Connick*, for example, the Supreme Court wrote that:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 103 L. Ed. 2d 412 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389, 109 S.Ct. 1197.

*Connick*, 563 U.S. at 61.

The U.S. Supreme Court in *Connick* made it clear that establishing municipal liability under a failure to train theory generally requires proof of a pattern of prior similar violations by city employees, *id.* at 62, and, as discussed below, plaintiffs have failed to create fact issues regarding such a pattern in this case. This court notes that the Supreme Court has given a narrow reading to the so-called "single incident exception" to the deliberate indifference standard, which

4

is implicated when, given the duties assigned to specific officers, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *See, e.g. Connick* at 62; *City of Canton* at 390. In this case, however, plaintiffs do not even attempt to proceed under the "single incident" exception, instead relying upon an argument that, "[t]he fact that Officer Gooch did not identify himself as an officer when he came on the scene shows that he was not properly trained to be a police officer." *Id.* Such a conclusory argument does not even come close to meeting the stringent *Connick* standard, however, and this court has little difficulty in concluding that the plaintiffs have failed to establish that the narrow "failure to train" exception applies in this case.

This court notes that plaintiffs undercut their municipal liability arguments even further by arguing that Officer Gooch violated "protocol and common practice" by failing to identify himself as a police officer when he instructed Williams to move his vehicle. [Brief at 7]. This assertion appears to contradict plaintiffs' conclusory assertion that the officers in this case acted pursuant to a municipal policy or custom, and at no point do they provide even a hint of proof in support of their assertion in this regard. Quite to the contrary, plaintiffs concede in their briefing that "they had no knowledge of any unconstitutional policy that caused their alleged injuries, as both testified that they had no knowledge of any of the City's policies and procedures." *Id.* at 16. Plaintiffs appears to suggest that they should be allowed to delve into this matter at trial, but it is well established that the discovery process exists precisely in order to allow plaintiffs to develop proof in support of their claims *before* trial.

5

Plaintiffs' briefing makes it clear that they have no proof supporting their assertions of municipal liability in this case, and, indeed, that their basic understanding of federal law in this context is faulty. In particular, plaintiffs write that:

> Plaintiffs' amended complaint and testimony make it clear that the reason they sued the City was because Officers Gooch and Holcombe worked for the City. That, of course, is sufficient, as there is respondeat superior liability under Section 1983. *See, e.g., Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Therefore, Plaintiffs' Section 1983 claims do not fail.

[Brief at 16-17]. Plaintiffs' argument strikes this court as setting forth the exact opposite of the actual U.S. Supreme Court precedent in this context, and nothing in the Fifth Circuit's decision in *Davis* supports their flatly erroneous description of the law in this context. This court acknowledges that federal law in this context includes certain principles which may seem non-intuitive to attorneys who are used to dealing with state tort law, and it is perhaps understandable that counsel for plaintiffs would have misunderstood the relevant law in this context. Still, there is no doubt that plaintiffs' understanding of the federal law relating to municipal liability is, in fact, faulty, and this court concludes that their § 1983 claims against the City are due to be dismissed.

In a case such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that courts should "decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates

      over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Importantly, the four § 1367(c) factors are listed in the disjunctive, which means that only one of them needs to be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction. This court notes that federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

    This court concludes that the first § 1367(c) factor, relating to the complexity of the law, supports declining to exercise supplemental jurisdiction over plaintiff's state law claims. In so concluding, this court notes that the allegations of this case implicate the provisions of the Mississippi Tort Claims Act (MTCA), and not merely as to one state law claim, but as to several. Needless to say, state courts have much greater experience in interpreting and applying the provisions of the MTCA than federal courts do, and, in this court's experience, the results reached by Mississippi Supreme Court in the MTCA context are frequently divergent in nature and there remain a large number of unsettled issues in this context. This raises the strong possibility, if not probability, that an appellate court ruling would be required to address MTCA liability issues in this case, and it is clear that the Mississippi Supreme Court is the only appellate court with the ability to actually create new law in this context, without the need for *Erie* guesses by federal judges. These considerations support declining to exercise supplemental jurisdiction under § 1367(c)(1).

    Given that the § 1367(c) factors are written in the disjunctive, this court could validly stop at this point, but it notes for the record that other (c) factors are met as well. For example, it

7

seems clear that the § 1367(c)(2) factor is met, since plaintiffs' state law claims "substantially predominate over the claim or claims over which the district court has original jurisdiction." In so stating, this court notes that plaintiffs' complaint includes a lengthy laundry list of "claims for relief," which are listed alphabetically. [Complaint at 4-5]. However, the only claims asserted by plaintiffs which appear to be clearly federal in nature are those seeking recovery for alleged violations of their "due process and Fourth Amendment rights," and these claims are located far down the alphabetical list, at "v." [*Id.* at 5]. It is thus plain that plaintiffs' state law claims heavily predominate over their federal law claims within the meaning of § 1367(c)(2).

Finally, this court believes that there is "[an]other compelling reason[ ] for declining jurisdiction" under (c)(4), which likewise constitutes a basis for abstaining on the grounds of comity under *Cohill*. This reason arises from the fact that, as a case involving a municipal defendant, this action implicates the public coffers in such a manner as to give rise to greater comity and federalism concerns than if purely private interests were at stake. Indeed, since Mississippi taxpayers will eventually have to pay any judgment or increased insurance premiums arising from this case, it seems entirely proper that state courts rule upon the state law liability issues in it. This court further observes that alleged misconduct by police officers raises important public policy issues, and it seems proper that Mississippi state courts decide the circumstances under which state law should offer compensation for such misconduct, if proven. This court therefore concludes that, having dismissed plaintiffs' federal claims, it should follow the "general rule" and decline to exercise supplemental jurisdiction over their state law claims in this case.

In light of the foregoing, it is ordered that the City's motion for summary judgment is granted with regard to plaintiff's federal claims. Having so ruled, this court declines to exercise

supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c), and these claims are hereby remanded to the Circuit Court of Lowndes County.[1]

This, the 29th day of April, 2025.

      /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

---

[1] *See Lee v. City of Pascagoula, Jackson Cnty., Mississippi,* 2023 WL 8654932, at *1 (S.D. Miss. Dec. 14, 2023); *Wilson v. Claiborne Cnty. Hosp.*, 2005 WL 8174980, at *2 (S.D. Miss. Oct. 7, 2005)(remanding state law claims pursuant to § 1367(c)).